813 F.2d 465
 259 U.S.App.D.C. 103
 LISTENERS' GUILD, INC. and Classical Radio for Connecticut,
Inc., Appellants,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee, GAF
Broadcasting Company, Inc., Intervenor. (Two Cases)
 Nos. 84-1627, 85-1250.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Jan. 29, 1987.
Decided March 10, 1987.
 
 Appeals from Orders of the Federal Communications Commission.
 Barbara A. Lee, with whom David M. Rice, New York City, was on the brief for appellants.
 C. Grey Pash, Jr., Counsel, F.C.C., with whom Jack D. Smith, General Counsel, Daniel M. Armstrong, Associate General Counsel and Sue Ann Preskill, Counsel, F.C.C. were on the brief, for appellee. Linda L. Oliver, Counsel, Washington, D.C., F.C.C. entered an appearance for appellee.
 Victor E. Ferrall, Jr., John T. Scott, III and David H. Solomon, Washington, D.C., were on the brief, for intervenor.
 Before WALD, Chief Judge, and STARR and DAVIS*, Circuit Judges.
 Opinion for the Court filed by Circuit Judge STARR.
 STARR, Circuit Judge:
 
 
 1
 These consolidated cases bring before us a challenge to the renewal of GAF Broadcasting Company's license to operate radio station WNCN-FM, New York, New York. The attack is mounted by Listeners' Guild, Inc. and Classical Radio for Connecticut, Inc., two groups whose members are listeners residing in WNCN's service area. The Commission denied the groups' request for a hearing with respect to their petition to deny GAF's license, a request premised upon GAF's refusal to convey the station to a third party. In addition, the FCC denied the groups' petition to intervene in a comparative hearing with respect to the license. After the groups' objections, the Commission ultimately granted GAF unconditional renewal of its license.
 
 
 2
 On appeal, the listeners groups seek reversal of the Commission's orders and request a hearing on the issue raised by the petition to deny, namely, whether the Commission's grant of GAF's renewal application should be conditioned upon GAF's fulfillment of its alleged contractual obligations. Specifically, two issues are presented: first, whether the Commission could reasonably conclude that the petition to deny raised no substantial and material questions with respect to GAF's license renewal; and second, whether the Commission reasonably determined that the application to intervene failed to demonstrate how the listeners groups' participation as parties would assist in determining the comparative issue. We affirm.
 
 
 3
 * In 1976, GAF Broadcasting Co. acquired the license to operate WNCN. In that connection, the listeners groups had challenged the license renewal application of GAF's predecessor, by virtue of the fact that the then-incumbent licensee had changed the station's music format from classical to rock, much to the chagrin of classical music aficionados in the metropolitan New York area. Settlement of the administrative proceedings culminated in a "Five Party Agreement" under which the station was transferred to GAF.[1] For its part, GAF agreed to maintain WNCN's classical format; in addition, GAF granted to Concert Radio, Inc. (which as its name suggests was committed to preservation of WNCN's classical music format) an option to acquire the station if GAF decided to sell the station within a five-year period.[2]
 
 
 4
 In 1980, only six months before expiration of Concert's option, GAF's parent corporation publicly announced a corporate restructuring which would involve, among other things, offering WNCN for sale. The listeners groups and Concert viewed this announcement as triggering the option provision set forth in the Five Party Agreement and GAF's ensuing refusal to transfer the station to Concert as a breach of that agreement. Concert thereupon repaired to state court in New York requesting, among other things, an order mandating specific performance of the option agreement.
 
 
 5
 At about the time of the unfolding contract dispute, GAF sought in the ordinary course a renewal of its license. The listeners groups thereupon filed a petition to deny GAF's application, alleging that the licensee had "defaulted on specific contractual obligations" in failing and refusing "to perform its obligation to assign the license and transfer the assets of the station to Concert."[3] The petition requested the Commission formally to designate the application for a hearing pursuant to 47 U.S.C. Sec. 309(e) (1982), on the question whether GAF had breached the Five Party Agreement, or, alternatively, to condition any grant of the renewal application upon GAF's compliance with the agreement. The Commission denied the petition, holding that the contractual dispute between GAF and Concert was a "purely private" one, inappropriate for Commission resolution, and concluding that GAF's alleged breach of contract "raises no substantial or material question of fact as to whether grant of GAF's renewal application would serve the public interest, convenience, and necessity."[4]
 
 
 6
 While the Commission's resolution of the petition to deny was under reconsideration, the listeners groups petitioned for leave to intervene in a comparative hearing for the license. This proceeding was instituted upon the filing of a competing application by yet another entity anxious to preserve WNCN's format, Classical Radio, Inc.[5] The Commission denied the groups' petition to intervene as well, upholding the ALJ's conclusion that, by virtue of their express refusal to take sides on the comparative issue, the listeners groups had failed to demonstrate that their participation as parties would assist the Commission.[6]
 
 
 7
 Before the comparative proceeding was concluded, however, the two contestants, GAF and Classical Radio, Inc., entered into a settlement agreement. The ALJ approved the settlement, dismissed Classical's competing application, terminated the proceeding, and granted GAF's application for an unconditional renewal of the license, subject to Commission action on the listeners groups' applications for review of the denial of their petition to deny. GAF Broadcasting Co., FCC No. 84M-2883 (Commission Memorandum & Order dated June 26, 1984), J.A. at 448.
 
 
 8
 As the foregoing events were unfolding in Washington, the trial court in New York had in the meantime adjudicated the contract dispute against GAF and entered an order granting specific performance in favor of Concert. The Appellate Division thereafter upheld the trial court's conclusion that GAF had committed a breach but reversed the trial court's mandated remedy of specific performance. The upshot was a remand to the trial court for a determination of damages.[7] Thus, as we write, the New York litigation is still pending.
 
 
 9
 In the wake of this protracted battle waged on two fronts, the listeners groups contend before us that the Commission erred in denying their petition to deny and in refusing to exercise its discretion to allow the groups to intervene as parties in the comparative proceeding. Their ultimate complaint, however, is that the Commission failed to affix to the grant of GAF's license renewal the express condition that the latter perform its obligations under the option provision contained in the Five Party Agreement.
 
 II
 
 10
 The Commission's disposition of broadcast license applications is governed by the Communications Act of 1934, 47 U.S.C. Secs. 151 et seq. (1982). Section 309(d) of the Act provides that the FCC shall grant or renew a license if it finds that "no substantial and material issues of fact" exist and that granting an application would be consistent with the public interest. Id.; see National Association for Better Broadcasting v. FCC, 591 F.2d 812, 815 (D.C.Cir.1978); Stone v. FCC, 466 F.2d 316, 321 (D.C.Cir.1972). It scarcely needs repeating that the Commission enjoys broad discretion in evaluating the statutorily mandated standard of the "public interest." See FCC v. WNCN Listeners Guild, 450 U.S. 582, 596, 101 S.Ct. 1266, 1275, 67 L.Ed.2d 521 (1981); FCC v. Sanders Brothers Radio Station, 309 U.S. 470, 473-75, 60 S.Ct. 693, 696-97, 84 L.Ed. 869 (1940).
 
 
 11
 Under the Act, any party in interest objecting to a license renewal may file a petition to deny the application. 47 U.S.C. Sec. 309(d). The listeners groups argue that the Commission's denial of their petition[8] was arbitrary and capricious because GAF's breach of its contractual obligations (as found by the New York trial and intermediate appellate courts) should not have been resolved by the Commission without a hearing. We cannot agree. The Act requires the Commission to designate an application for hearing where "a substantial and material question of fact is presented." 47 U.S.C. Sec. 309(e) (emphasis added). To mandate a hearing, a petitioner's allegations must be sufficiently substantial "to show that ... a grant of the application would be prima facie inconsistent with [the public interest]." 47 U.S.C. Sec. 309(d)(1). It is thus well settled that a hearing is not automatically required where factual disputes exist. See, e.g., California Public Broadcasting Forum v. FCC, 752 F.2d 670, 674 (D.C.Cir.1985); Tele-Media Corp. v. FCC, 697 F.2d 402, 409 (D.C.Cir.1983); Stone, 466 F.2d at 322-23. Indeed, this court has consistently recognized that substantial deference is owed to the Commission's determination of whether factual questions are presented that rise to the triggering level of a substantial and material issue. See, e.g., Eastern Carolinas Broadcasting Co. v. FCC, 762 F.2d 95, 105 (D.C.Cir.1985); California Public Broadcasting Forum, 752 F.2d at 675; Stone, 466 F.2d at 322-23. As the court has put it, "[t]he decision whether to hold hearings 'is a matter in which the Commission's discretion ... is paramount.' " National Association for Better Broadcasting, 591 F.2d at 816 (quoting Columbus Broadcasting Coalition v. FCC, 505 F.2d 320, 324 (D.C.Cir.1974)); see also Stone, 466 F.2d at 322. The extent of review of the Commission's decision is therefore narrow; if its "action was not arbitrary, capricious, or unreasonable, we must affirm." National Association of Better Broadcasting, 591 F.2d at 816; Stone, 466 F.2d at 322.
 
 
 12
 In the situation at hand, we are satisfied that the Commission reasonably determined that the contract dispute between GAF and Concert[9] did not rise to the level of an issue warranting a hearing. With ongoing litigation in the state courts, the Commission reasonably adopted, as it were, a "wait and see" posture. The FCC expressly observed that the grant of GAF's license renewal application "was and remains subject to and without prejudice to whatever action, if any, the Commission may deem necessary or appropriate in light of future action by the N.Y. judicial system in Concert's suit against GAF." GAF, FCC No. 85-128, supra note 4, at 3 n. 8, J.A. at 144. This decision is entirely consistent with the Commission's longstanding policy of refusing to adjudicate private contract law questions for which a forum exists in the state courts. See, e.g., Agreements Between Broadcast Licensees and the Public, 57 F.C.C.2d 42 (Comm'n 1975); Carnegie Broadcasting Co., 5 F.C.C. 2d 882, 884 (Comm'n 1966); Transcontinent Television Corp., 44 F.C.C. 2451, 2461 (Comm'n 1961).
 
 
 13
 Likewise, the Commission reasonably refused to condition the grant of the license renewal upon GAF's compliance with the Five Party Agreement. The Commission rightly concluded that to do so at this time "would, by definition, require the Commission to prejudge the contractual dispute which is currently being litigated in the New York state court system." GAF, FCC No. 85-128, supra note 4, at 3, J.A. at 144. See also supra note 9. The groups' protestation that the FCC has improperly limited its analysis to the breach vis-a-vis Concert, as opposed to the separate, independent breach of the contractual obligation owed by GAF to the groups, is unavailing inasmuch as the remedy sought by the groups (a conditional grant) is inextricably tied to the fate of the New York litigation.
 
 
 14
 Equally fundamental, the listeners groups' ultimate objective--grant of GAF's renewal application conditioned upon the latter's performance of its obligations under the Five Party Agreement--was specifically addressed and accommodated in the main by the Commission. The FCC indicates that the Commission is looking toward the outcome of the state court litigation and will take that outcome into account. See GAF, FCC No. 85-128, supra note 4, at 3 n. 8, J.A. at 144. At oral argument, Commission counsel reaffirmed the agency's intent to do just that. This action indisputably opens the door for the listeners groups, upon completion of the New York litigation, to request the Commission to attach conditions to GAF's license renewal or otherwise take appropriate action. This result, in our view, provides as a practical matter the listeners groups with what they want, as constrained by the reality of non-final litigation in New York. Although we recognize that the Commission's reserving the possibility of further action on GAF's license obviously falls short of the expressly conditioned grant that the listeners groups earnestly seek, the Commission's broad discretion in matters appertaining to licensing is more than ample to warrant upholding this particular action, supported as it is by the Commission's general policy of restraint in respect of commonlaw disputes.[10]III
 
 
 15
 In this case, the listeners groups also challenge the Commission's order denying them full party status in the comparative proceeding. As the rule governing intervention expressly states,[11] the decision whether to permit intervention lies in the discretion of the presiding officer. The rule also requires, among other things, that the petition demonstrate how the petitioner's participation will aid the Commission's resolution of the designated issues.
 
 
 16
 The groups' petition fell short of the standards clearly delineated by the rule. They did not request the Commission to designate for hearing issues additional to the designated comparative issue;[12] what is more, the groups specifically declined to take a position on the standard comparative issue of which applicant would better serve the public interest.[13] This tack was scarcely risk free, particularly in view of the broad discretion vested in the presiding officer with respect to such matters. A broad, undifferentiated desire to participate does not satisfy the strictures of the intervention rule; indeed, the Commission has consistently denied intervention in comparative proceedings to neutral public representatives. See, e.g., Cowles Broadcasting, Inc., 86 F.C.C.2d 993, 1018-19 (Comm'n 1981), aff'd sub nom. Central Florida Enterprises v. FCC, 683 F.2d 503 (D.C.Cir.1982), cert. denied, 460 U.S. 1084, 103 S.Ct. 1774, 76 L.Ed.2d 346 (1983). In view of their unwillingness to choose sides, the listeners groups are in an entirely different posture from that of the representatives in the watershed case which the groups invoke to buttress their claim. See Office of Communication of United Church of Christ v. FCC, 359 F.2d 994, 998 (D.C.Cir.1966) (where challengers sought intervention to oppose the licensee's renewal application).
 
 
 17
 The listeners groups argue, however, that their intervention as parties was necessary to advance the public's interest in the development of a full and accurate record.[14] Not so. In fact, it is the Commission's staff which is charged with the duty of representing the public interest in comparative proceedings. See Pressley v. FCC, 437 F.2d 716, 719 (D.C.Cir.1970); Office of Communication of United Church of Christ v. FCC, 359 F.2d 994, 1003 (D.C.Cir.1966). In view of the listeners groups' proposed, non-issue specific role in the comparative proceedings, the Commission reasonably upheld the ALJ's denial of intervention.
 
 
 18
 Affirmed.
 
 
 
 *
 Of the United States Court of Appeals for the Federal Circuit, sitting by designation pursuant to 28 U.S.C. Sec. 292(a)
 
 
 [1]
 The parties to the 1976 Five Party Agreement were WNCN Listeners' Guild, Inc., predecessor to the party to this proceeding; Classical Radio for Connecticut, Inc.; Starr Broadcasting Group, Inc. (the then-incumbent licensee); Concert Radio, Inc. (which had filed a competing application against the incumbent's renewal application); and GAF, which had expressed an interest in acquiring the station. See Starr WQIV, Inc., 59 F.C.C.2d 257 (Comm'n 1976)
 
 
 [2]
 The Five Party Agreement was submitted to the Commission which, while neither approving nor disapproving its terms, granted assignment of the license to GAF. 59 F.C.C.2d at 259-60
 
 
 [3]
 Petition to Deny, Application of GAF Broadcasting Co., No. BRH-810202G7 (May 1, 1981), reprinted in Joint Appendix ("J.A.") at 6
 
 
 [4]
 GAF Broadcasting Co., FCC No. 85-128 (Commission Memorandum Opinion & Order dated Mar. 20, 1985), J.A. at 142; see also GAF Broadcasting Co., FCC No. 84-329 (Commission Order dated July 16, 1984), J.A. at 125 (upholding Broadcast Bureau's denial of Petition to Deny); Letter from Laurence Harris, Chief, Broadcast Bureau (Oct. 1, 1982) (refusing to reconsider denial of Petition to Deny); Letter from Laurence Harris, Chief, Broadcast Bureau No. 8420-MF (June 21, 1982) (denying Petition to Deny)
 
 
 [5]
 See GAF Broadcasting Co., 47 Fed.Reg. 29,873 at 29,874 (July 9, 1982). The competing applications were set for hearing in a consolidated proceeding pursuant to 47 U.S.C. Sec. 309(e). Id
 
 
 [6]
 GAF Broadcasting Co., FCC No. 84-245 (Commission Order dated May 30, 1984), J.A. at 431; see also GAF, FCC No. 83R-45 (Rev. Bd. June 16, 1983), J.A. at 256 (upholding ALJ's denial of leave to intervene); GAF, FCC No. 83M-1929, J.A. at 252 (June 13, 1983) (decision of administrative law judge denying Supplemental Petition for Leave to Intervene); GAF, FCC No. 83M-565 (Feb. 17, 1983), J.A. at 180 (decision of administrative law judge denying Petition for Leave to Intervene). The ALJ did, however, permit the listeners groups to participate in the hearing as nonparties
 
 
 [7]
 Concert Radio, Inc. v. GAF Corp., 108 A.D.2d 273, 278, 488 N.Y.S.2d 696, 700-01 (1st Dep't 1985). In an unreported memorandum decision, the New York Court of Appeals subsequently ruled that it can entertain an appeal from the Appellate Division only after the hearing on remand. See Appellants' Brief at 16-17 n. 4. The contract litigation is thus not final even as to the liability issue
 
 
 [8]
 The listeners groups did not seek outright denial of GAF's license renewal application. See Appellants' Brief at 8. Counsel for the Commission nonetheless conceded at oral argument that a petition to deny is an appropriate vehicle for requesting a conditional grant of a license renewal. Cf. Gottfried v. FCC, 655 F.2d 297, 311 (D.C.Cir.1981); National Org. for Women v. FCC, 555 F.2d 1002, 1020 n. 119 (D.C.Cir.1977); Stone, 466 F.2d at 332 (D.C.Cir.1972) (petition for rehearing)
 
 
 [9]
 The listeners groups stress that they request a hearing on the implications of GAF's breach of its option agreement vis-a-vis the listeners groups. See Appellants' Brief at 21. The determination of that matter, however, involved resolution of essentially the same issues as the underlying breach of contract dispute between GAF and Concert
 
 
 [10]
 The Commission's reservation of jurisdiction over the grant of GAF's license renewal application preserves its ability to accommodate the state courts' final determination of the contract dispute. Cf. Granik v. FCC, 234 F.2d 682, 684 (D.C.Cir.1956) (FCC's grant of an assignment application without a hearing effectively destroyed the alleged optionees' potential rights under an option contract)
 
 
 [11]
 The rule provides in pertinent part:
 The petition must set forth the interest of petitioner in the proceedings, must show how such petitioner's participation will assist the Commission in the determination of the issues in question, must set forth any proposed issues in addition to those already designated for hearing, and must be accompanied by the affidavit of a person with knowledge as to the facts set forth in the petition. The presiding officer, in his discretion, may grant or deny such petition or may permit intervention by such persons limited to a particular stage of the proceeding.
 
 
 [47]
 C.F.R. Sec. 1.223(b) (emphasis added)
 
 
 [12]
 In fact, the listeners groups specifically stated that they "do not propose to raise any issues in addition to those already designated for hearing." Petition for Leave to Intervene at 5 (Aug. 6, 1982), reprinted in J.A. at 163, 167
 
 
 [13]
 See Petition for Leave to Intervene, J.A. at 166
 
 
 [14]
 As previously noted, the listeners groups' ultimate objective was to ensure the conditional grant of GAF's renewal application. The groups sought to introduce evidence that the Commission determined was "for the most part" relevant to the breach of contract dispute or suitable for presentation through nonparty witnesses. GAF, FCC No. 84-245, supra n. 6 at 4, J.A. at 434. The listeners groups did participate in the proceeding through such witnesses, Appellants' Brief at 13; see supra n. 6, although we hasten to add our awareness of the fact that nonparty-participant status scarcely rises to the dignity of full-party status
 We also note in closing that, in the wake of oral argument, the parties have favored us with submissions concerning WNCN's present format. Because those matters do not directly bear on the specific issues raised by these appeals and by virtue of our institutional limitations in engaging in fact-finding ab initio, we foreswear any comment, much less any conclusion, with respect to this most recent dispute.