**CITIZENS FOR JAZZ ON WRVR, INC., Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

**Riverside Broadcasting Co., Inc., Intervenor.**

No. 84–1431.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 17, 1985.

Decided Oct. 29, 1985.

Sandra Parker for the appellant.

David Silberman, Atty., F.C.C., Washington, D.C., with whom Jack D. Smith, Gen. Counsel, and Daniel M. Armstrong, Associate Gen. Counsel, F.C.C., Washington, D.C., were on brief, for appellee. Sue Ann Preskill, Atty., F.C.C., Washington, D.C., also entered an appearance for appellee.

George H. Shapiro, Washington, D.C., was on brief for intervenor.

Before BORK and SCALIA, Circuit Judges, and MACKINNON, Senior Circuit Judge.

SCALIA, Circuit Judge:

Citizens for Jazz on WRVR, Inc. ("Citizens") appeals from a decision of the Federal Communications Commission rejecting without a hearing its petition to deny the application of Riverside Broadcasting Company, Inc. ("Riverside") for a radio broadcasting license renewal. The case presents the question of the proper standard to be used by the Commission in determining whether a petition to deny on the basis of licensee misrepresentation presents "a substantial and material question of fact" and therefore must be set for hearing, 47 U.S.C. § 309(d)(2) (1982); and the question whether that standard was satisfied here.

I

On July 24, 1978, Viacom International, Inc. ("Viacom") and the former owner of Riverside, Sonderling Broadcasting Corporation ("Sonderling"), filed with the Commission an application to transfer the control of Riverside from Sonderling to Viacom. In that application, Viacom stated that it would continue the station's jazz format, under which approximately sixty percent of the air time was devoted to jazz music. The application was granted on November 28, 1979, and transfer was effected on March 25, 1980. Just under six months later, on September 8, 1980, the entertainment format of the station was changed from jazz to country-and-western music.

When Riverside's broadcasting license came up for renewal, Citizens, on April 29, 1981, filed a petition to deny the renewal application, alleging, *inter alia*, that Viacom had misrepresented its programming intentions in the transfer application. As direct evidence of this charge, Citizens submitted the affidavit of Carole Lee, a former station employee, who stated that Roy Sonderling, Vice President of Sonderling, and David Meyer, an attorney for Viacom, had told her before the granting of the transfer application that Viacom would be changing the programming format. Citizens also pointed to the following circumstantial evidence: the fact that the day after the transfer two executives of Viacom's country-and-western stations were appointed National Program Director and President

of Viacom's Radio Division; the practical difficulties of arranging a million-dollar advertising campaign and establishing a new identity and format as quickly as Viacom did (*viz.*, in less than a month) after the date Viacom asserted the decision to change format was made (August 4, 1980); and public statements by the station's general manager and Viacom's new Radio Division President explaining that the reason for the change was poor audience ratings going back to 1977, which were known by Viacom before the transfer application was filed. In response, Riverside filed affidavits of Sonderling and Meyer denying having made such statements to Lee, and denying any knowledge of a format change at the time of the alleged statements. Riverside also filed affidavits of its Radio Division President and its Chairman and Chief Executive Officer, stating that format changes were not even proposed until June of 1980, and that no commitment to change was made until August of that year.

By opinion and order issued April 15, 1983, the Commission rejected Citizens' petition to deny and, without evidentiary hearing, granted Riverside's renewal application. *Riverside Broadcasting Co.,* 53 RAD.REG.2d (P & F) 1154 (1983). On July 18, 1984, by further opinion and order, it denied Citizens' petition for reconsideration. *Riverside Broadcasting Co.,* 56 RAD. REG.2d (P & F) 618 (1984). Citizens appeals under 47 U.S.C. § 402(b)(6) (1982).

## II

Petitioner's principal contention is that, as a matter of law, the facts set forth in the petition to deny raised a substantial and material question of fact requiring an evidentiary hearing—*i.e.,* that any judgment to the contrary would be so irrational as to be arbitrary and capricious, 5 U.S.C. § 706(2)(A) (1982). Because all parties agree that allegations of misrepresentation are material to license renewal, *see, e.g., Leflore Broadcasting Co. v. FCC,* 636 F.2d 454, 461 (D.C.Cir.1980), the dispute centers on the question of "substantiality."

The statutorily prescribed process for the Commission's factual evaluation of challenges to broadcast licenses embodies three separate determinations, which—though often made concurrently rather than successively—are quite distinct. *First,* the Commission must determine whether the petition to deny sets forth "specific allegations of fact sufficient to show that ... a grant of the application would be prima facie inconsistent with [the public interest, convenience, and necessity]." 47 U.S.C. § 309(d)(1). If it does not meet this threshold requirement, it can form no basis for an evidentiary hearing. *See, e.g., United States v. FCC,* 652 F.2d 72, 90 (D.C.Cir. 1980). Even if it does meet the requirement, however, the Commission must determine, *second,* whether "on the basis of the application, the pleadings filed, or other matters which [the Commission] may officially notice," "a substantial and material question of fact is presented." 47 U.S.C. § 309(d)(2). If not, no evidentiary hearing need be held. *Third,* whether or not an evidentiary hearing is held, the Commission must make the ultimate determination of whether the facts establish that the "public interest, convenience, and necessity will be served by the granting [of the application]." 47 U.S.C. § 309(a). As our subsequent discussion will show, petitioner's position in this case tended to confuse the first and second determinations; and the Commission's the second and third.

Citizens asserts that "[i]f a petitioner ... 'alleges facts which, if established, raise a substantial [question] ... he must have a hearing.'" Brief for Petitioner at 11 (quoting *Hecksher v. FCC,* 253 F.2d 872, 873 (D.C.Cir.1958)). Not so. That was the law at the time *Hecksher* was decided, but reversing it was one of the principal purposes of the 1960 amendments that produced the currently governing provisions. *See generally* H.R.REP. No. 1800, 86th Cong., 2d Sess. 9–12, *reprinted in* 1960 U.S.CODE CONG. & AD.NEWS 3516, 3517–20. Under these provisions, a protestant's allegations are regarded as "if established" for purposes of the first determination described above—whether a prima facie case has

been made by the petition to deny. *See, e.g., Columbus Broadcasting Coalition v. FCC*, 505 F.2d 320, 323–24 (D.C.Cir.1974) (quoting *West Michigan Telecasters, Inc. v. FCC*, 396 F.2d 688, 691 (D.C.Cir.1968)). But for purposes of the second determination—whether there exists, by reason of a valid petition or otherwise, "a substantial and material question of fact" requiring a hearing—the Commission may, and indeed must, weigh against the allegations of the petition the other evidence before it, including opposing affidavits filed pursuant to § 309(d)(1). On the basis of *all* those materials it must decide whether the ultimate question of fact placed in issue (in this case, the question of conscious misrepresentation by the transferee) is a "substantial" one—*i.e.*, whether the totality of the evidence arouses a sufficient doubt on the point that further inquiry is called for. *See, e.g., Columbus Broadcasting Coalition*, 505 F.2d at 330; *Broadcast Enterprises, Inc. v. FCC*, 390 F.2d 483, 485 (D.C. Cir.1968).

The factual question whose substantiality is at issue for purposes of the determination regarding evidentiary hearing is the *ultimate* fact and not the proximate ones that are ordinarily the "specific allegations of fact" set forth in the petition to deny and supported by affidavits on the basis of personal knowledge. *See, e.g., Stone v. FCC*, 466 F.2d 316, 327 (D.C.Cir.1972). In this case, for example, it is not whether Meyer told Lee in 1978 that the format would be changed. Rather, the relevant factual question, which this proximate factual allegation bears upon, is whether the transferee intentionally misled the Commission. If the proximate rather than the ultimate facts were the focus of the "substantial question" inquiry, then simply by admitting the proximate facts an applicant could deny a petitioner the opportunity to

elicit in discovery and cross-examination the further facts necessary to elevate its case from one which merely raises a serious question of disqualifying behavior to one which establishes it by a preponderance of the evidence—or, as the Commission said was required for a finding of misrepresentation, by "clear, precise and indubitable" evidence. *Riverside Broadcasting Co.*, 53 Rad.Reg.2d (P & F) at 1157 (quoting *Overmyer Communications Co.*, 56 F.C.C.2d 918, 925 (1974)).[1]

It is for this reason that we cannot agree with the statement in respondent's brief that "where the disposition of a petition to deny turns on a determination of 'inferences to be drawn from facts already known,' an evidentiary hearing is not required." Brief for Respondent at 12 (quoting *Anti-Defamation League of B'nai B'rith v. FCC*, 403 F.2d 169, 171 (D.C.Cir.1968), *cert. denied*, 394 U.S. 930, 89 S.Ct. 1190, 22 L.Ed.2d 459 (1969)). It is true that it is not *invariably* required; but not true (as respondent implies) that it is *never* required. A weak inference can no more raise a substantial question regarding the ultimate fact than can a weak factual showing; but a strong inference assuredly can. If, to take an example based on the facts of the present case, it were known or admitted that one week before the transfer application was filed, the president of Viacom issued instructions that a plan for shifting from jazz to country-and-western programming be readied for immediate implementation, it seems to us inconceivable that the Commission could decline to hold a hearing on the question of misrepresentation, at which further evidence could be elicited concerning that ultimate fact. The drawing of inferences from undisputed proximate facts, like the balancing of disputed proximate facts, is a matter for the Com-

---

1. The Commission did not observe that the standard set forth in the quoted ALJ opinion in *Overmyer* was disapproved (in favor of the "preponderance-of-the-evidence" standard) by the Review Board. *See Overmyer Communications Co.*, 54 F.C.C.2d 1045, 1060 (1975). However, since petitioner has not challenged this application of a higher-than-usual standard of proof to

the merits determination, we assume, without deciding, that it is valid. *But see*, in addition to the Review Board opinion in *Overmyer, Lewel Broadcasting, Inc.*, 86 F.C.C.2d 896, 914 (1981). *Cf. Steadman v. SEC*, 450 U.S. 91, 101 S.Ct. 999, 67 L.Ed.2d 69 (1981). *See generally* Murchison, *Misrepresentation and the FCC*, 37 Fed.Com.L.J. 403, 446–50 (1985).

mission's judgment. But no more for the one than for the other can that judgment be sustained if it is so irrational as to be arbitrary or capricious. *See California Public Broadcasting Forum v. FCC*, 752 F.2d 670, 679 (D.C.Cir.1985).

The uncontested facts in the present petition to deny consisted of the promotion within the Viacom organization, immediately after the transfer, of two executives with special background in country-and-western programming; the temporal proximity of the format change to the transfer; and the low audience ratings of the jazz format at the time of transfer. While, for the reasons just stated, we reject Commission counsel's automatic dismissal of these allegations as a basis for a required evidentiary hearing simply because they were uncontested and only the inferences from them were in dispute; we nonetheless do not find them to be such strong circumstantial evidence of misrepresentation as to justify reversing the Commission's judgment that that ultimate question was not a substantial one. None of them is necessarily inconsistent with an innocent view of events, and the inference of guilt was directly refuted by sworn affidavits of no intent to change format, which the Commission was required to weigh in the balance.

As to the factual allegations that were contested, contained in the affidavit of Carole Lee: In view of the fact that neither of the individuals asserted to have told Lee of a planned format change was remotely responsible for making such plans (one was Vice President of the transferor and the other a lawyer for the transferee); the fact that both of them, who at the present time have no apparent interest in the transferee, categorically deny the alleged statements; and the fact that those who *were* responsible for the station's programming immediately after the transfer deny the existence of any planned format change; we find it impossible to hold that these statements, together with the weak inference from the uncontested facts, required a finding that a substantial question concerning misrepresentation was presented.

## III

Petitioner also raised, though only in passing, an argument that goes not to whether the Commission's action was permissible under the applicable criteria, but to whether the applicable criteria were in fact used. To say, as we just have, that the Commission *could* lawfully reach the judgment that no substantial question of fact was presented is not to say that it *did* so. Citizens asserts, in essence, that the Commission applied to the second determination in the proceeding (whether an evidentiary hearing should be held) the standard that was only appropriate for the third determination (whether the application should be granted)—*i.e.*, that it required the evidence to establish "clear, precise and indubitable" proof of misrepresentation, instead of merely to raise a "substantial question" concerning that fact.

As we have noted earlier, all three determinations relevant to a petition to deny are typically made concurrently: Whether the petition to deny meets the statutory requirements, whether the application under consideration raises a factual issue substantial enough to call for a hearing, and (if not) whether the license should be granted, are discussed in the same opinion—if, indeed, they are discussed separately *at all*, which is rarely, since a negative resolution of the second question alone makes the first question moot and the answer to the third one (insofar as the particular issue raised in the petition is concerned) foreordained. But even making due allowance for normal ellipsis and imprecision, we must agree with petitioner that, at least as far as its expressed reasoning is concerned, the Commission in the present case applied the third-determination standard to the second-determination issue.

The analysis in the Commission's initial opinion began with the statement that proof of misrepresentation requires evidence that is "clear, precise and indubitable"; proceeded to a discussion of why the evidence in this case did not meet that

standard; and concluded that "[a]ccordingly, the petitioners' allegations of misprepresentation [*sic*] fail to raise a substantial and material question of fact." *Riverside Broadcasting Co.*, 53 RAD.REG.2d (P & F) at 1157. When petitioner raised the same objection it has presented here, the Commission's opinion on reconsideration persisted in the same analysis:

> Citizens also charges that the standard of evidence applied in the Commission Order—that the burden is on the accuser to show misrepresentation by evidence that is "clear, precise and indubitable"— is actually the standard to be applied during a hearing, not before. However, in order to raise a substantial and material question of fact necessitating such a hearing, the petitioner must provide specific allegations of fact which are capable of meeting such a burden. The "evidence" submitted by petitioners did not constitute such a showing.

*Riverside Broadcasting Co.*, 56 RAD.REG. 2d (P & F) at 620 (footnote omitted).

We agree with petitioner that this was error. *After* denying a request for an evidentiary hearing, the Commission is assuredly entitled to apply the merits decision standard (whether it be the normal "preponderance of the evidence" or the "clear, precise and indubitable" test) to the evidence before it and, when the standard is not met, to reject the petition to deny and grant the application. But satisfaction of that standard is *not* the criterion for determining whether a hearing should be held before the final judgment is made. Rather, the criterion is, as the statute provides, whether the material properly before the Commission presents "a substantial and material question of fact." It would be peculiar to require, as a precondition for a hearing, that the petitioner fully establish (in the face of the applicant's contrary affidavit evidence) what it is the very purpose of the hearing to inquire into; and the statutory requirement of a "substantial question" is a particularly inapt choice of language to convey that peculiarity. The statute in effect says that the Commission must look into the possible existence of a fire only when it is shown a good deal of smoke; the Commission has said that it will look into the possible existence of a fire only when it is shown the existence of a fire.

The intervenor seeks to justify this lapse in the Commission's reasoning by asserting that the Commission was not mistakenly applying the standard for the *third* (merits) determination, but was rather correctly applying the standard for the *first* determination—*i.e.*, it concluded that no hearing had to be held because the petition to deny did not meet the statutory requirement of setting forth "specific allegations of fact sufficient to show that ... a grant of the application would be prima facie inconsistent with [the public interest, convenience, and necessity]." Brief for Intervenor at 8. That cannot be so, for several reasons. First, the "prima facie sufficiency" determination is to be made on the assumption that the specific facts set forth are true, and without reference to evidence on the other side; but the Commission's rejection here rested upon the implausibility of the asserted proximate facts (because of contradicting affidavits) and upon direct evidence regarding the ultimate fact submitted by the applicant. And second, "prima facie sufficiency" means the degree of evidence necessary to make, *not* a fully persuasive case, but rather what a reasonable factfinder *might* view as a persuasive case—the quantum, in other words, that would induce a trial judge to let a case go to the jury even though he himself would (if nothing more were known) find against the plaintiff. *See* BALLENTINE'S LAW DICTIONARY 987 (3d ed. 1969). It may be that the existence of a higher-than-usual proof requirement (the "clear, precise and indubitable" standard) at the merits determination stage entails some augmentation of the demonstration needed to meet the "prima facie sufficiency" requirement (as well as the demonstration needed to establish a "substantial question of fact"). If so, however, it surely does not augment it to a level identical to that of the merits determi-

nation, which is the standard the Commission applied here.

We emphasize that nothing in our opinion is meant to cast doubt upon the validity of past Commission decisions denying evidentiary hearings, or to establish a new and more stringent standard for such denials. To the contrary, we merely reaffirm the standard that the Commission and the courts have applied in the past and that the present Commission opinion either ignores or misdescribes. It remains a standard, as we discussed in Part II of this opinion, which leaves it to the Commission to determine when a factual question is substantial enough to justify the burden of an evidentiary hearing. And our review of that determination is particularly deferential, not only because it is, as we have said, inherently the sort of judgment akin to the "probable cause" determination made by prosecutors, see *Office of Communication of United Church of Christ v. FCC,* 425 F.2d 543, 546 (D.C.Cir.1969), but also because "Congress intended to vest in the FCC a large discretion to avoid time-consuming hearings in this field whenever possible," *Southwestern Operating Co. v. FCC,* 351 F.2d 834, 835 (D.C.Cir.1965) (footnote omitted).

But the determination must at least be *made*—and since, as far as we can tell from the Commission's expression, it was not made here, we must remand for further consideration (and, if the Commission finds it necessary, further proceedings) consistent with this opinion.

*So ordered.*