947 F.2d 505
 292 U.S.App.D.C. 89
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
SOUTHEAST FLORIDA BROADCASTING LIMITED PARTNERSHIP, Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION, Respondent
 No. 90-1482.
 United States Court of Appeals, District of Columbia Circuit.
 Oct. 28, 1991.
 
 REVIEW DENIED.
 Before: WALD, D.H. GINSBURG and RANDOLPH, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case was considered on petition for review of an order of the Federal Communications Commission. The issues have been accorded full consideration by the Court and occasion no need for a published opinion. See D.C.Cir.Rule 14(c). For the reasons stated in the accompanying Memorandum, it is
 
 
 2
 ORDERED AND ADJUDGED, by the Court, that the petition for review is denied.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven (7) days after disposition of any timely petition for rehearing. See D.C.Cir. Rule 15.
 
 MEMORANDUM
 
 4
 Petitioner Southeast Florida Broadcasting Limited Partnership ("Southeast") seeks review of a decision and order of the Federal Communications Commission ("FCC" or "Commission") denying its application for a permit to construct a new station and approving the mutually exclusive renewal of a broadcast license held by Metroplex Communications, Inc. ("Metroplex"). Because we conclude that the Commission committed no legal error and that there was substantial evidence in the record to support the FCC's order, we deny the petition for review.
 
 I. BACKGROUND
 
 5
 Metroplex applied to the FCC for a renewal of its license for radio station WHYI-FM in Ft. Lauderdale, Florida in August 1986. In October 1986, Southeast filed a mutually exclusive competing application to construct a new radio station. Following a "comparative renewal" hearing at which both applicants presented testimony, the Administrative Law Judge ("ALJ") denied Southeast's application and granted the renewal application of Metroplex. Both the FCC's Review Board ("Board") and the Commission itself affirmed that decision. All three found Metroplex worthy of a renewal expectancy credit for substantial service to the public and all three denied Southeast any credit for integration of ownership and management.[1]
 
 
 6
 The ALJ found that Southeast was entitled to a moderate preference with respect to the number of media outlets owned (diversification) and that Southeast was financially qualified. The ALJ also found that Metroplex had demonstrated "reasonable diligence" to ensure that nothing was broadcast on WHYI in return for undisclosed consideration or "payola" (47 U.S.C. § 317(c) (1988)),[2] although he expressed "serious reservations as to the appropriateness" of the station's practice of requesting multiple album copies from record companies and using them "for purposes other than on the air giveaways." Initial Decision of Chief Administrative Law Judge Thomas B. Fitzpatrick, 4 F.C.C.R. 847, 897 p 15 (1989) ("Initial Decision "). The ALJ concluded that, because no station had ever been cited for this practice, he would not rule that WHYI had "willfully and/or knowingly" violated the sponsorship identification requirement. Id. at 15.
 
 
 7
 The Review Board, on the other hand, concluded that the ALJ erred in finding Southeast financially qualified because the Board decided that Southeast's contractual obligation to pay its lawyers $500,000 would come due at a time when payment would deplete Southeast's available funds below the amount necessary to meet its operating expenses. The Board also disagreed with the ALJ's interpretation of § 317(a) of the Act as prohibiting the station's solicitation and acceptance of these extra records. Decision of the Review Board, 4 F.C.C.R. 8149, 8162 p 63 (1989) ("Decision ").
 
 
 8
 Although the Board declined to adopt Southeast's interpretation of § 317(c), that reasonable diligence to prevent payola is an independent requirement which can be violated regardless of whether any actual payola occurred, it did accept the ALJ's conclusion that even if Southeast was correct, the measures taken by Metroplex were sufficient to meet a reasonable diligence standard. Id. at 8156 p 39. The Commission accordingly affirmed the Review Board's Decision in favor of Metroplex. Memorandum Opinion and Order, 5 F.C.C.R. 5610 (1990).
 
 II. ANALYSIS
 
 9
 The FCC has broad discretion in granting broadcasting licenses. When reviewing FCC comparative hearings, we must satisfy ourselves that "the agency [engaged] in reasoned decision-making, articulating with some clarity the reasons for its decision and the significance of the facts particularly relied on." Central Florida Enterprises, Inc. v. FCC, 598 F.2d 37, 49 (D.C.Cir.1978), cert. dismissed Sub nom. Cowles Broadcasting, Inc. v. Central Florida Enterprises, Inc., 441 U.S. 957 (1979); see also Cascade Broadcasting Group, Ltd. v. FCC, 822 F.2d 1172, 1173 (D.C.Cir.1987).
 
 
 10
 Petitioner's main allegations are that the Commission granted an unwarranted renewal expectancy to Metroplex and erred in finding both that Metroplex did not commit payola violations and that Southeast was not financially qualified. We find that there is substantial evidence in the record to support the Commission's reasoning on each of these issues.
 
 A. Renewal Expectancy
 
 11
 The FCC may grant a renewal expectancy credit to an existing station if that station has a record of substantial service to the public. FCC v. National Citizen's Comm. for Broadcasting, 436 U.S. 775, 805 (1978). Petitioner contends that WHYI's record does not qualify for such a credit and that in evaluating the renewal expectancy factors, the Commission gave too much weight to the factor of reputation.
 
 
 12
 Petitioner says that WHYI's record cannot be classified as "substantial" under the controlling criteria[3] because the amount of non-entertainment programming was "minuscule," falling well below the amount "faulted by the Court" in Monroe Communications Corp. v. FCC, 900 F.2d 351 (D.C.Cir.1990). We find that argument unpersuasive.
 
 
 13
 First, the FCC says it has abandoned primary reliance on a quantitative standard for non-entertainment programming in renewal expectancy cases since Deregulation of Radio, 84 F.C.C.2d 968 (1981), opting instead to determine what "substantial service" consists of on a case-by-case basis. The FCC has discretion to create its own standards for renewal expectancy as long as it engages in reasoned decisionmaking. WHYI's record supports the FCC's decision to grant it renewal expectancy credit. See Initial Decision at 850-53 pp 21-47 (detailing the extent of WHYI's locally-produced and locally-oriented programming and air times).
 
 
 14
 Second, as for Monroe, it is not dispositive here because the facts in the two cases are quite different. In Monroe, station Video 44 had undergone, late in its license term, what appeared to be a permanent format change involving a marked and permanent cutback in the quantity and quality of its non-entertainment programming. In reviewing Video 44's renewal application, we said the Commission erred in evaluating the station's programming record over the entire license period. We remanded for a reevaluation of the station's record, giving greater weight to the period after the format change. In this case, there was no format change, and the ALJ, Board and Commission all agree after in-depth review that the non-entertainment programming was adequate, especially in view of its responsiveness to and origination in the local community.
 
 
 15
 Finally, we reject the allegation that the FCC relied too heavily on the station's reputation; the only evidence presented on that issue was the testimony of twenty-three local witnesses, all on behalf of WHYI. While Southeast argues that these "licensee-selected" witnesses were not a representative sample, it provided no witnesses of its own nor indeed any other evidence as to opposing community views. Under such circumstances we cannot fault the Commission's decision.
 
 B. Sponsorship Identification
 
 16
 There is a statutory obligation on licensees under the Federal Communications Act, 47 U.S.C. § 317, "to make a sponsorship identification announcement when matter is broadcast in return for any money, service or other valuable consideration received by the licensee." Initial Decision at 895 p 4.[4] Consideration received for broadcasting material without such sponsorship identification is referred to as payola.[5] Petitioner alleges that the ALJ improperly placed the burden of proving payola on Southeast, and it raises three questions: First, whether the misplaced burden of proof affected the licensing outcome; second, whether payola occurred; and third, whether there can be a separate § 317(c) violation for lack of diligence to prevent payola if no payola is found to have occurred.
 
 1. Burden of Proof
 
 17
 Southeast alleges, and the FCC does not dispute, that it was improperly given the burden of proving WHYI had violated § 317 of the Act once the issue was specified by the ALJ. The Commission found this error to be harmless because Metroplex presented sufficient evidence on payola to support a ruling that the station did not receive consideration for which an announcement should have been made. We find that the record supports the Commission's conclusion that a shift in burden would not have altered the decision. Initial Decision at 897 p 18.
 
 2. Payola
 
 18
 Southeast claims that Metroplex violated § 317(a) by requesting from record companies multiple copies of records (fifty or more) and the services of recording artists for free concerts at reduced talent rates without making announcements that it had received such consideration. Whether these actions affected the choice of broadcast material is, of course, a question of fact for the Commission to decide based upon substantial evidence in the record. 5 U.S.C. § 706(2)(E) (1988).
 
 
 19
 The ALJ noted that the multiple copies were received only after the albums had been already rotated onto the play list, and the Board and Commission also relied on the statement of the station's Music Director that this was standard industry practice. The Commission did not abuse its discretion in deciding to accept these assertions and in concluding on that basis that there was insufficient indication that the copies were given in consideration for playing the albums.
 
 
 20
 Southeast's evidence consists merely of restating the testimony of the Music and Program Directors about incidents involving their use of drugs with record company executives, theft of albums for resale, false inclusion of songs in the station's published playlist and other misdeeds. Southeast insists that such testimony requires an inference of lack of credibility as to the Directors' assurances that despite other wrongdoing no material was broadcast in exchange for consideration. Witness credibility, however, is a question for the trier of fact, and the ALJ's determination that no payola actually occurred will not be overturned.
 
 3. Diligence
 
 21
 Every FCC radio station licensee is directed under § 317(c) of the Federal Communications Act to "exercise reasonable diligence to obtain from its employees ... information to enable such licensees to make the announcement required by this section." Southeast and the ALJ read this section as requiring a separate duty of diligence to prevent payola, but the Board and Commission suggest that there cannot be a violation of subsection (c) without a payola violation of subsection (a).
 
 
 22
 We need not reach this question of statutory interpretation because the ALJ and Board also found that even if no payola need be shown for a violation, Metroplex evidenced sufficient diligence in its efforts to prevent any such occurrence. Its prevention procedures included employee submission of "payola affidavits" every six months, distribution of an employee handbook which warned against the crime of payola, direct communication of this concern to the employees by the general manager and a three-person music selection committee designed to minimize the possibility of payola. Initial Decision at 897 p 18. The Commission supported this finding, noting that "the record does not indicate that ... Metroplex failed to exercise reasonable diligence to prevent violations of § 317 from occurring." Memorandum Opinion and Order, 5 F.C.C.R. at 5610 p 4. We express no view on the Commission's statutory interpretation.
 
 C. Other Issues
 
 23
 As to other allegations, we find the ALJ correctly declined to add the issue of candor because Southeast's petition was not supported by the affidavit of someone with personal knowledge, as required by FCC rules. In re Applications of Metroplex Communications, Inc. (WHYI-FM), FCC 87M-1301 slip op. at 4 p 7 (June 8, 1987). Further, the Commission acted within its discretion in deciding that there was not "sufficient doubt" on the candor and equal employment opportunity issues to warrant further inquiry. Citizens for Jazz on WRVR, Inc. v. FCC, 775 F.2d 392, 395 (D.C.Cir.1985).
 
 
 24
 We need not decide the complex issue of Southeast's financial qualification, as we are upholding the Commission's determination that Metroplex is the preferable candidate even if Southeast is financially qualified. Memorandum Opinion and Order, 5 F.C.C.R. at 5610 p 4.
 
 
 25
 Finally, we dismiss petitioner's argument that it did not receive a fair hearing because it was characterized as an "abusive applicant" in the original version of a Commission publication, a designation subsequently removed from later versions. "[T]he mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the board members at a later adversary hearing." Withrow v. Larkin, 421 U.S. 35, 55 (1975). The burden was on Southeast to overcome the assumption that administrators are "capable of judging a particular controversy on the basis of its own circumstances." Id. This burden has not been met.
 
 
 26
 For the foregoing reasons, the petition for review is denied.
 
 
 
 [1]
 Southeast has a two-tiered ownership structure in which the limited partners have a 96% equity interest, and the General Partner and proposed full-time manager has a 4% equity interest. However, the ALJ rejected this two-tiered structure as a "sham" given the General Manager's lack of broadcast experience and lack of financial investment in the partnership. Initial Decision of Chief Administrative Law Judge Thomas B. Fitzpatrick, 4 F.C.C.R. 847 (1989) at 903 p 50
 
 
 [2]
 The statute reads in pertinent part:
 All matter broadcast by any radio station for which any money, service or other valuable consideration is directly or indirectly paid, or promised to or charged or accepted by, the station so broadcasting, from any person, shall, at the time the same is broadcast, be announced as paid for or furnished, as the case may be, by such person....
 ....
 The licensee of each radio station shall exercise reasonable diligence to obtain from its employees, and from other persons with whom it deals directly in connection with any program or program matter for broadcast, information to enable such licensee to make the announcement required by this section.
 47 U.S.C. § 317(a)(1), (c).
 
 
 [3]
 The criteria are: (1) the amount of non-entertainment programming presented, the time of day it is presented and whether it is directed to local needs and interests, (2) the amount of locally produced programming, and (3) the reputation of the station in the community. Third Further Notice of Inquiry and Notice of Proposed Rulemaking, 4 F.C.C.R. 6363, 6368 n. 11 (1989)
 
 
 [4]
 See supra note 2
 
 
 [5]
 See Public Notice, 3 FCCR 7708 (1988)