Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued March 17, 2003        Decided July 25, 2003

No. 02-1098

TRANSPORTATION INTELLIGENCE, INC.,
APPELLANT

v.

FEDERAL COMMUNICATIONS COMMISSION,
APPELLEE

HIGHWAY INFORMATION SYSTEMS, INC.,
INTERVENOR

———

Appeal of an Order of the
Federal Communications Commission

———

*Donald J. Evans* argued the cause and filed the briefs for appellant.

*Pamela L. Smith*, Counsel, Federal Communications Commission, argued the cause for appellee. With her on the brief were *Jane E. Mago*, General Counsel, and *John E. Ingle*,

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Deputy Associate General Counsel. *Daniel M. Armstrong*, Associate General Counsel, entered an appearance.

*James A. Stenger* argued the cause and filed the brief for intervenor. *Charles A. Zdebski* entered an appearance.

Before: Ginsburg, *Chief Judge*, and Edwards and Garland, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* Garland.

Garland, *Circuit Judge*: Transportation Intelligence, Inc. appeals from an order of the Federal Communications Commission denying the company's application for review of a decision to authorize a competitor to market a radio transmitter. Finding that the Commission's order was neither arbitrary nor capricious, we affirm.

I

Both Transportation Intelligence (TransIntel) and Highway Information Systems (Highway) manufacture and sell highway advisory radio systems, which use low-power AM radio transmitters to broadcast traffic, emergency, and other information to drivers.[1] TransIntel is a competitor, as well as a customer, of Highway; each company has developed and markets its own radio transmitter, while TransIntel also resells some of Highway's devices. TransIntel's principals, Joanne and John Alpiser, were employed by Highway until they left to start TransIntel in 1994. Joanne Alpiser's father, Virgil Duncan, was also employed by Highway until he left the firm in 1998.

The Communications Act of 1934 grants the Federal Communications Commission (FCC) authority to promulgate "reasonable regulations," consistent with "the public interest, convenience, and necessity," to govern "the interference potential of devices which in their operation are capable of emitting radio frequency energy . . . in sufficient degree to

---

[1] Highway is a successor in interest to a chain of companies that marketed the transmitter at issue in this case. For convenience, we refer to all of the companies as "Highway."

cause harmful interference to radio communications." 47 U.S.C. § 302a(a). Acting pursuant to that authority, the FCC generally prohibits the sale of radio frequency devices absent FCC authorization, which for the type of transmitter at issue in this case requires the seller to obtain "certification." *See* 47 C.F.R. §§ 2.803(a), 2.907; *see generally id.* § 2.801 *et seq.* A party seeking certification must submit a written application to the Commission, complete with detailed descriptions and measurements, "showing compliance with the pertinent FCC technical requirements." *Id.* § 2.1033(b)(6); *see id.* §§ 2.1031-.1060. The Commission will grant a certificate only if it determines that the equipment is capable of complying with those requirements and that the grant "would serve the public interest, convenience and necessity." *Id.* § 2.915(a); *see id.* § 2.919.[2]

Once the FCC grants an application, any modification in the "design, circuitry or construction" of the equipment requires a new application for certification. *Id.* § 2.932(a). There is an exception, however, for certain minor modifications classified as "permissive." *Id.* § 2.932(b). If the FCC finds that a manufacturer has failed to abide by these rules, it may revoke the device's certification or assess a forfeiture penalty. *See id.* §§ 1.80(a), 2.939.

On May 19, 2000, TransIntel filed a complaint with the Commission, alleging, among other things, that Highway had made substantial modifications to a low-power AM transmitter that the FCC had originally authorized in 1979, without seeking a new equipment certification. TransIntel stated that it discovered those modifications when purchasers of that

---

[2] As of 1999, the FCC permitted parties to submit an application either to the agency or to a designated private entity, known as a "Telecommunication Certification Body," authorized by the FCC to certify equipment. Streamlining the Equipment Authorization Process, 64 Fed. Reg. 4984, 4985-90 (FCC Feb. 2, 1999) (codified at 47 C.F.R. §§ 2.960, .962); *see* 47 U.S.C. § 302a(e) (authorizing the FCC to use "private organizations for testing and certifying the compliance of devices"). The application at issue in this case was submitted to the FCC itself.

Highway transmitter, which TransIntel had resold, complained that the device caused interference with radio transmissions in Rockland County, New York. TransIntel asked the FCC to revoke Highway's certification, require a recall, impose a fine, and conduct a hearing on Highway's character and fitness to hold an FCC equipment certification.

Highway responded to TransIntel's complaint by submitting an application for a new certification of the modified transmitter, which Highway had also altered to address the complained-of interference. Highway stated that it regarded the modifications it had made in its authorized device as "permissive," but was applying for a new certification because it could not locate the original test data. On June 28, the FCC's Office of Engineering and Technology (OET) granted Highway's application.

On July 28, 2000, TransIntel filed a petition for reconsideration with OET. It asked that Highway's certification be rescinded or that a hearing be held on the matter in light of what it described as Highway's willful violations of FCC regulations. In a letter dated November 17, 2000, addressing both TransIntel's complaint and its petition for reconsideration, OET denied the petition, refused to revoke Highway's new certification, and deferred a decision on whether Highway's alleged earlier infractions warranted a forfeiture penalty. OET stated that, because Highway's modified device had now been properly certified and the interference concerns resolved, revocation of the certification was inappropriate.

On December 15, 2000, TransIntel applied for review by the Commission of OET's decision on its petition for reconsideration. TransIntel again requested that the FCC revoke Highway's certification or hold a hearing to determine whether Highway had the qualifications for an equipment certification. After considering the parties' written submissions, the Commission denied TransIntel's application for review and refused to revoke the certification or designate the matter for a hearing. *See Highway Info. Sys.*, 17 F.C.C.R. 4027, 4029-30 (2002) [hereinafter *FCC Order*].

In denying TransIntel's application for review, the Commission rejected Highway's argument that the modifications

it had made to its transmitter were permissive changes that did not require a new equipment authorization. Nonetheless, the FCC affirmed OET's grant of certification. Although the modifications were not permissive as defined by FCC rules, the Commission determined that they were "relatively innocuous," that "the resulting modified transmitter readily passed the Certification process," and that the device was "now properly certified." *Id.* at 4029. It also explained that the interference of which TransIntel complained "was not the result of a rule violation or the lack of appropriate re-Certification." The Commission noted that although it might have pursued the imposition of a fine as an enforcement matter, the one-year statute of limitations for such a sanction had already passed. *Id.* (citing 47 C.F.R. § 1.80(a)(3)); *see* 47 C.F.R. § 1.80(c)(3). But "revocation of the equipment authorization sought by TransIntel is not an appropriate remedy or sanction in this case," the Commission said, noting that it had "stated before that violation of section 2.803 of our rules generally does not form the basis for a denial of an equipment authorization." *Id.* (citing *Toshiba Corp.*, 57 Rad. Reg. 2d (P & F) 1619, 1622 & n.5 (1985)).

The FCC did not exclude the possibility that "perpetration of a fraud on the Commission . . . could form the basis of such a denial." *Id.* It concluded, however, that "TransIntel has not raised a substantial and material question of fact as to whether Highway's actions were so willful or deliberate as to rise to the level of implicating Highway's fitness to hold a FCC equipment authorization." *Id.* Nonetheless, the Commission noted that it might "call in further post-grant samples of the Highway device to ensure that it continues to comply," and warned that "[a]ny new instance of non-compliance by Highway could result in sanctions including fines and forfeitures" and, if continuous or repeated, "could call into question Highway's fitness to hold an equipment authorization." *Id.*

## II

As we have recounted, the Commission's order denied TransIntel's application for review of OET's denial of

TransIntel's petition for reconsideration, including TransIntel's request for revocation of the certification granted to Highway by OET. TransIntel now appeals from the FCC's order. Before we may address the merits of that appeal, we must consider threshold questions concerning our jurisdiction and standard of review.

A

The denial of a petition for reconsideration by the Commission is generally nonreviewable, unless the request for reconsideration was based on " 'new evidence or changed circumstances.' " *Schoenbohm v. FCC*, 204 F.3d 243, 250 (D.C. Cir. 2000) (quoting *ICC v. Brotherhood of Locomotive Eng'rs*, 482 U.S. 270, 284 (1987)); *see Entravision Holdings, LLC v. FCC*, 202 F.3d 311, 313 & n.** (D.C. Cir. 2000). The FCC does not contend that TransIntel's appeal is unreviewable on this ground, however, and rightly so. In this case, the FCC did not deny a petition for reconsideration of its own prior decision, but rather that of a staff office. Moreover, although TransIntel characterized its filing with OET as a "petition for reconsideration" of OET's decision to grant Highway's application for a new certification, it was in fact the first opportunity that the FCC's rules afforded TransIntel to make any filing at all regarding that application, and hence the first opportunity OET had to rule on TransIntel's opposition to the application. *See* 47 C.F.R. § 2.923 (providing that only "[p]ersons aggrieved by virtue of an equipment authorization *action*" may file "a petition for reconsideration or an application for review" (emphasis added)). Accordingly, both the OET decision of which TransIntel sought review before the Commission, and the FCC decision of which TransIntel seeks review in this court, were dispositions of TransIntel's first filings at each level of the agency. The principle that agency denials of reconsideration are generally nonreviewable is therefore inapplicable to this case.

The Commission does advance another ground, however, for concluding that this court lacks jurisdiction to review its order. The FCC argues that the order was nothing more

than a determination not to take enforcement action, a category of decision that — like a denial of reconsideration — is presumptively "committed to agency discretion" and hence unreviewable. *Heckler v. Chaney*, 470 U.S. 821, 838 (1985) (quoting 5 U.S.C. § 701(a)(2)); *see id.* at 832–33. But it is not accurate to characterize the FCC's decision here as a refusal to take enforcement action. Nor is it correct to describe TransIntel's petition for reconsideration or subsequent application for review as a request to take such action.

It may well be fair to describe as an enforcement request TransIntel's initial complaint to the Commission, which asked that Highway be fined and its certification revoked for, among other things, selling its modified transmitter without a new certification. But the FCC's refusal to sanction Highway for that violation is not the subject of this appeal; indeed, TransIntel concedes that that refusal is unreviewable. *See* Reply Br. at 2–3. After TransIntel filed its complaint, however, Highway responded by submitting an application for a new certification of the modified device, which OET then granted. And it is that grant of Highway's application — an affirmative act of approval, not merely a refusal to take action — that TransIntel challenges here. *See Heckler*, 470 U.S. at 831 (stating that affirmative acts of approval, in contrast to refusals to take action, are judicially reviewable).

It is true, as the FCC contends, that TransIntel's opposition to Highway's application took the form of a request to revoke Highway's newly granted certification. But as we have just described, that was simply a function of the agency's rules. In contrast to the rules governing broadcast license applications,[3] the rules concerning equipment certification applications provide no mechanism for an opponent to contest an application before it is granted. Hence, a petition for reconsideration was TransIntel's only option and revocation its only remedy. *See* 47 C.F.R. § 2.923; *see also Toshiba Corp.*, 57 Rad. Reg. 2d at 1620 ("[T]he Commission's rules

---

[3] *See* 47 U.S.C. § 309(d)(1) (permitting interested parties to lodge their opposition to a broadcast license application prior to FCC action on the application); 47 C.F.R. § 21.30 (same).

do not contemplate petitions to deny equipment authorization applications. . . . The only prescribed procedure for challenging an equipment authorization is by a petition for reconsideration or application for review."). Nor does the fact that revocation is TransIntel's requested remedy in this court put its appeal in a materially different posture from that routinely presented when a party appeals from the FCC's denial of a challenge to an application for a broadcast license: in such cases, the FCC normally has already granted the license, *see, e.g.*, *Citizens for Jazz on WRVR, Inc. v. FCC*, 775 F.2d 392, 394 (D.C. Cir. 1985), and vacatur is a logical remedy, *see, e.g.*, *Weyburn Broad. Ltd. v. FCC*, 984 F.2d 1220, 1222 (D.C. Cir. 1993).

Furthermore, in contrast to the circumstances that face a court trying to review a failure to take enforcement action, here the FCC's grant of Highway's application "provides a focus for judicial review, inasmuch as the agency [did] exercise[ ] its power," and "[t]he action . . . can be reviewed to determine whether the agency exceeded its statutory" authority. *Heckler*, 470 U.S. at 832. Nor is this a case in which "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Id.* at 830. The Communications Act grants the FCC authority to promulgate "reasonable regulations," consistent with "the public interest, convenience, and necessity," to govern the manufacture and sale of radio transmitting devices. 47 U.S.C. § 302a(a). Under that authority, the Commission has promulgated regulations[4] providing that it will grant an application for certification only if it finds that the "equipment is capable of complying with pertinent technical standards," and that a "grant of the application would serve the public interest, convenience and necessity." 47

---

[4] *See CC Distribs., Inc. v. United States*, 883 F.2d 146, 154 (D.C. Cir. 1989) (holding that "regulations promulgated by an administrative agency in carrying out its statutory mandate can provide standards for judicial review of agency action" (internal quotation marks omitted)).

C.F.R. § 2.915(a); *see id.* § 2.919.[5]  There is no question that this "public interest" standard constitutes a broad grant of discretion to the FCC.  But there is also no question that this is the same standard that governs the FCC's actions in a multitude of areas,[6] and against which this court routinely judges the Commission's actions to determine whether they are arbitrary or capricious.[7]

### B

Having concluded that we have jurisdiction to review the FCC's decision, we now turn to the remaining threshold issue, our standard of review.  All parties agree — as do we — that

_____

[5] The regulations further provide that the Commission may revoke an equipment authorization "[b]ecause of conditions . . . which would warrant it in refusing to grant an original application."  47 C.F.R. § 2.939.

[6] *See, e.g.*, 47 U.S.C. § 309(a) (directing the FCC to grant broadcast license applications when it "find[s] that public interest, convenience, and necessity would be served"); *id.* § 316 (authorizing the FCC to modify a station license or construction permit "if in the judgment of the Commission such action will promote the public interest, convenience, and necessity"); *see also id.* § 160 (requiring the FCC to "forbear from applying any regulation or any provision of the" Communications Act to a telecommunications carrier if, among other things, the FCC determines that such forbearance "is consistent with the public interest").

[7] *See, e.g., Serafyn v. FCC*, 149 F.3d 1213, 1218–19 (D.C. Cir. 1998); *Astroline Communications Co. v. FCC*, 857 F.2d 1556, 1561–62 (D.C. Cir. 1988); *National Ass'n for Better Broad. v. FCC*, 591 F.2d 812, 816 (D.C. Cir. 1978); *see also National Broad. Co. v. United States*, 319 U.S. 190, 225–26 (1943) (holding that the Communication Act's public interest standard is sufficiently definite to overcome a challenge under the nondelegation doctrine).

Highway also argues that we are barred from considering TransIntel's appeal of the denial of its request to hold a hearing because, although TransIntel asked the Commission to hold a hearing, it never specifically argued that the Commission was

this court must review the merits of the FCC's order under the traditional "arbitrary or capricious" standard applied to Commission decisions. Under that standard, we will uphold the FCC's order as long as it was not " 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' " *Global Crossing Telecomms., Inc. v. FCC*, 259 F.3d 740, 745 (D.C. Cir. 2001) (quoting 5 U.S.C. § 706(2)(A)); *see* 47 U.S.C. § 402(g).

TransIntel, however, contends that a stricter — or at least more structured — standard must apply to the FCC's refusal to hold a hearing regarding Highway's application for certification. In support, it cites cases like *Astroline Communications Co. v. FCC*, 857 F.2d 1556, 1561 (D.C. Cir. 1988), which set forth a two-step test that the FCC must use to determine whether to hold an evidentiary hearing regarding a broadcast license application. First, the protesting party must submit "a petition containing 'specific allegations of fact sufficient to show . . . that a grant of the application would be prima facie inconsistent' " with the public interest, convenience, and necessity. *Id.* at 1561 (quoting 47 U.S.C. § 309(d)(1)). The FCC must examine the petition "on the basis of the petitioner's allegations alone," proceeding " 'on the assumption that the specific facts set forth [in the petition] are true.' " *Id.* (quoting *Citizens for Jazz*, 775 F.2d at 397). Second, if the FCC determines that the petition satisfies this requirement, it must then determine whether, " 'on the basis of the application, the pleadings filed, or other matters which it may officially notice[,] . . . a substantial and material question of fact is presented.' " *Id.* (quoting 47 U.S.C. § 309(d)(2)). If the FCC finds that such a question is presented, the Commission "*shall* proceed" to an evidentiary hearing. 47 U.S.C. § 309(d)(2) (emphasis added); *see id.* § 309(e).

But *Astroline* makes clear that this structured, two-step process is required by the *statute* that governs hearings concerning broadcast license applications.[8] Indeed, the dou-

_____

required to do so. We think that TransIntel's arguments were sufficiently specific.

[8] *Astroline*, 857 F.2d at 1561 ("Parties challenging an application by means of a petition to deny and who seek a hearing thereon must satisfy a two-step test established in 47 U.S.C. § 309(d)(1) &

ble quotation marks and citations in the above paragraph demonstrate that the *Astroline* analysis is drawn directly from 47 U.S.C. § 309(d) and (e). There is, however, no such statutory provision for hearings concerning equipment certification applications. Rather, the Communications Act simply grants the FCC authority to promulgate regulations to govern the manufacture and sale of such devices. *See* 47 U.S.C. § 302a.

Pursuant to this grant of authority, the Commission has promulgated the following regulation: "Whenever it is determined that an application for equipment authorization presents substantial factual questions relating to the qualifications of the applicant or the equipment . . ., the Commission *may* designate the application for hearing." 47 C.F.R. § 2.921 (emphasis added).[9] As is apparent on its face, the regulation does not contain the language that led the *Astroline* court to conclude that the agency must follow a two-step test in deciding whether to designate a hearing for a broadcast license.[10] Equally important, the regulation states only that, when there is a substantial factual question, the Commission "may" designate an equipment certification application for hearing — as compared to § 309(e), which states that it "shall" do so when there is such a question concerning a broadcast license application. And the FCC reasonably ar-

---

(2)."); *see also Citizens for Jazz*, 775 F.2d at 394 (describing the Commission's two-step process as "statutorily prescribed").

[9] This regulation could be read as applying only to hearings on "an application," and not to hearings concerning petitions for reconsideration, because the latter are not mentioned. The FCC does not suggest such a reading, however, and because it would not affect our disposition, we do not consider it.

[10] The regulation does refer to the existence of a "substantial factual question[ ]," which is similar to the issue in the second step of the test applicable to broadcast licenses. But *Astroline* makes clear that "Congress intended that courts play a limited role in reviewing the Commission's determinations at this second stage," and that "[w]e may disturb the Commission's decision to deny [a] petition for a hearing only if . . . we determine that that decision was arbitrary or capricious." 857 F.2d at 1562.

gues that "may" denotes discretion rather than obligation on the part of the Commission. *Cf. Appalachian Power Co. v. EPA*, 135 F.3d 791, 807 (D.C. Cir. 1998) (stating that "when a statute uses the permissive 'may' rather than the mandatory 'shall,' this choice of language suggests that Congress intends to confer some discretion on the agency" (internal quotation marks omitted)).

We therefore conclude that the standard of review appropriate for the FCC's refusal to designate Highway's application for a hearing is the same as that applicable to the merits of the agency's decision: we may overturn those determinations only if they were arbitrary or capricious.

### III

The Commission denied TransIntel's application for review, without designating an evidentiary hearing, concluding that the company had "not raised a substantial and material question of fact as to whether Highway's actions were so willful or deliberate as to rise to the level of implicating Highway's fitness to hold a FCC equipment authorization." *FCC Order*, 17 F.C.C.R. at 4029. Because we find that this conclusion was neither arbitrary nor capricious, we reject both TransIntel's challenge to the Commission's denial of a hearing, and the company's challenge to the denial of its underlying application for review.

First, it does not appear that any further facts were required to dispose of TransIntel's application for review. *Cf. California Pub. Broad. Forum v. FCC*, 752 F.2d 670, 674 (D.C. Cir. 1985) (holding that "the dispute must truly be *factual*" for a hearing on a petition to deny a television license to be required). TransIntel submitted a variety of factual materials, including affidavits from its principals, the Alpisers, asserting that Highway's management had discussed the need for obtaining a new certification for the modified transmitter during the time that they worked for Highway. Ms. Alpiser's father, Virgil Duncan, also attested to providing Highway's management with a copy of the FCC regulations that require manufacturers to obtain fresh certifications for

modified transmitters. TransIntel argues that these facts show that Highway was aware that a new certificate was required, and that its decision not to apply for one (until TransIntel complained) was willful and deliberate. TransIntel does not, however, contend that there were any additional facts that a hearing might have unearthed, and, even when pressed at oral argument, company counsel could not suggest any.

Second, the FCC's order rested not on the truth of TransIntel's factual allegations, but rather on their materiality: in the Commission's view, TransIntel had not asserted facts that, even if true, would have rendered Highway's actions "*so* willful or deliberate *as to rise to the level* of implicating Highway's fitness to hold a FCC equipment authorization." *FCC Order*, 17 F.C.C.R. at 4029 (emphasis added). The Commission made clear that the threshold for such a finding of materiality is high, and that under FCC precedent, "violation of section 2.803 . . . generally does not form the basis for a denial of an equipment authorization." *Id.* (citing *Toshiba Corp.*, 57 Rad. Reg. 2d at 1622 & n.5). Rather, what is required, the FCC said, is "the perpetration of a fraud on the Commission or conduct likely to undermine the integrity of the equipment authorization process." *Id.*

In this case, the Commission found that "the equipment changes made by Highway" were not permissive, and that Highway therefore violated § 2.803 by marketing its device without recertification. But the Commission also determined that the changes "were relatively innocuous and [that] the resulting modified transmitter readily passed the Certification process." *Id.* TransIntel does not dispute that determination, other than to point out that the modified transmitter did cause interference. The FCC further determined, however, that "the interference that TransIntel cites as a negative consequence of the modifications was not the result of a rule violation or the lack of appropriate re-Certification," and that "this potential for interference would not likely have been discovered" even if Highway had submitted a timely applica-

tion. *Id.*[11] TransIntel does not dispute that assessment, either. Rather, it rests its challenge on its claim that Highway's violation was deliberate. But it was reasonable for the FCC to conclude that a single, minor regulatory violation — even if deliberate — did not rise to the level of "fraud on the Commission" or "conduct likely to undermine the integrity" of the certification process. And that reasonableness dooms TransIntel's procedural as well as substantive challenges.[12]

Moreover, we also note the FCC's recognition that it had other means available to ensure that Highway's transgression would not be repeated. The Commission retained the option, it said, to "call in further post-grant samples of the Highway device to ensure that it continues to comply." *Id.* And it warned that "[a]ny new instance of non-compliance by Highway could result in sanctions including fines and forfeitures" and, if "[c]ontinuous or repeated[,] . . . could call into question Highway's fitness to hold an equipment authorization." *Id.* We cannot second-guess the Commission's determination that such post-certification monitoring was the more appropriate way to deal with the case of a "relatively innocuous" regulatory violation. *See generally Global Crossing*, 259 F.3d at 745.

Finally, TransIntel argues that the FCC's order was inconsistent with two prior Commission decisions, *Atkins Broadcasting*, 71 Rad. Reg. 2d (P & F) 1398 (1993), and *TeleSTAR*,

---

[11] The Commission explained that "[t]he interference cited by TransIntel was apparently due to a 22nd harmonic," while FCC rules "require testing only through ten harmonics." *FCC Order*, 17 F.C.C.R. at 4029.

[12] *See National Ass'n for Better Broad.*, 591 F.2d at 816 (holding that if the FCC's decision that there were no "substantial and material questions of fact" was "not arbitrary, capricious or unreasonable," a court must uphold the Commission's denial of an evidentiary hearing); *Toshiba Corp.*, 57 Rad. Reg. 2d at 1622 & n.5 (refusing to deny certification because, although "particularly serious violations, such as the perpetration of a fraud on the Commission," could form the basis for denial of an equipment authorization, "we have no allegations of such serious violations before us").

*Inc.*, 64 Rad. Reg. 2d (P & F) 1444 (1988). In those cases, TransIntel asserts, the Commission either denied a license application or designated it for a hearing on the ground that the applicant had prematurely constructed the very facilities for which it was seeking approval. The FCC notes, however, that *Atkins* and *TeleSTAR* involved broadcast and common carrier microwave stations, respectively, and contends that cases involving licensing of the use of the public spectrum are not true precedents for equipment certifications. In the latter, the Commission points out, its primary focus has been on the technical performance of the device, rather than on the character of the applicant. *See Toshiba Corp.*, 57 Rad. Reg. 2d at 1622 & n.5. Indeed, TransIntel concedes that there are "no recorded cases of a certification application being denied based on the qualifications of the applicant rather than the device itself." TransIntel Br. at 16.

In any event, neither *TeleSTAR* nor *Atkins* was a case in which the violation was merely that the applicant had deliberately begun station construction before obtaining FCC approval. To the contrary, in *TeleSTAR* the applicant submitted "patently false information" to the Commission, 64 Rad. Reg. 2d at 1452, while in *Atkins* the applicant "admitted knowingly submitting fabricated letters" and "false statements of fact," which the FCC concluded were "calculated to mislead" the Commission, 71 Rad. Reg. 2d at 1400–01. The allegations asserted in this case simply do not rise to that level.

In sum, because the FCC's order rested not on a factual dispute but rather on the Commission's estimation of the relative insignificance of Highway's infraction, and because that policy judgment was neither arbitrary nor capricious, we have no basis for overturning the decision of the Commission.

## IV

For the foregoing reasons, the order of the Federal Communications Commission is

*Affirmed.*