ROGERS, Circuit Judge,
dissenting.
In concluding that the Rainbow/PUSH Coalition fails to demonstrate standing under Article III of the U.S. Constitution, the court applies a heightened evidentiary standard for causation and redressibility that precedent does not require. According to the court, Rev. Jones’s affidavit is insufficient to establish constitutional standing because it fails to explain how the burden on his resources is “directly attributable to the University’s alleged discrimination” or how “an end to discrimination at this particular ‘benchmark institution[ ]’ would perceptibly affect his activities.” Op. at 1241, 1242. Under Supreme Court precedent and our own case law, Rev. Jones’s affidavit alleges all of the facts necessary to establish constitutional standing.
In Havens Realty Corp. v. Coleman, 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982), the Supreme Court held that an organizational plaintiff suffers an injury caused by a defendant’s discriminatory practices when it devotes counseling and referral resources to identifying and counteracting such discrimination. Id. at 379, 102 S.Ct. 1114. Such “concrete and demonstrable injury to the organization’s activities — with the consequent drain on the organization’s resources — constitutes far more than simply a setback to the organization’s abstract social interests.” Id. Relying on Havens, this court has held that “an organization establishes Article III injury if it alleges that purportedly illegal action increases the resources the group must devote to programs independent of its suit challenging the action.” Spann v. Colonial Village, Inc., 899 F.2d 24, 27 (D.C.Cir.1990); see also Fair Employment Council, Inc. v. BMC Marketing Corp., 28 F.3d 1268, 1276 (D.C.Cir.1994). Under this precedent, Rev. Jones’s affidavit sufficiently establishes that the burden on his resources is traceable to the Commission’s unconditional renewal of the University’s radio station license.
The facts alleged in Rev. Jones’s affidavit must be “taken to be true.” Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); see Sierra Club v. EPA, 292 F.3d 895, 899 (D.C.Cir.2002). Rev. Jones describes the University’s radio station KWMU-FM as “one of the benchmark institutions in the community,” as it is “one of only two secular, noncommercial full power radio stations in [the] community.” Jones Aff. ¶ 8. He alleges that KWMU-FM discriminates against minority job applicants in the St. Louis area, and that such discrimination is “particularly egregious” because the University is a public educational institution. Id. ¶ 4. He states that Rainbow/PUSH “seeks to ensure that all Americans have equal opportunities to work in industries, such as broadcasting, that are essential to democracy,” and that “[t]oward this end, Rainbow/PUSH counsels job applicants and employers on the subject of equal employment opportunity, and ... undertake[s] to place job applicants ... and guide their transition into the job market.” Id. ,¶ 14.
More particularly, Rev. Jones explains that he personally devotes significant resources to identifying employers that discriminate against racial minorities so as to “avoid sending young people off to search for employment at work sites where they will either waste their timing filing applications doomed to be discarded on the basis of race, or be hired and face the frustration of a career where they can never fulfill their full potential because of discrimination based on race.” Id. He also *1245 states that he devotes significant resources to counteracting employment discrimination in the St. Louis area by “counselling] young people on how to deal with discrimination when they encounter it, how to avoid it, and how to fight it.” Id. These burdens on Rainbow/PUSH’s and Rev. Jones’s resources are traceable to the Commission’s unconditional renewal of the University’s radio station license because, Rev. Jones explains, “[b]y renewing the University’s license [for KWMU-FM] for another 8 years without so much as a hearing, the FCC extended, rather than provided relief from, the station’s ability to continue the alleged pattern of discriminatory employment practices.” Id. ¶ 5. Such discrimination may, as this court explained in Fair Employment Council, “increase the number of people in need of counseling” or “reduee[] the effectiveness of any given level of outreach efforts.” 28 F.3d at 1276. Rev. Jones concludes that “[i]f major institutions ... that provide leadership roles in society as a whole like public radio stations ” would stop discriminating, the burden on his counseling and referral resources “would be lifted from [his] shoulders.” Jones Aff. ¶ 14 (emphasis added).
Counsel for the Commission observed at oral argument that Rev. Jones’s affidavit would have been “stronger” if it had identified a specific instance in which KWMU-FM had denied employment to an applicant whom Rev. Jones had referred or counseled. But counsel did not argue, and indeed could not argue, that the failure to do so rendered Rev. Jones’s affidavit insufficient as a matter of law. Neither Supreme Court nor our precedent requires the organization to identify a specific instance in which the defendant discriminated against an individual whom the organization referred or counseled; an allegation that the organization expended resources to combat such discrimination is sufficient. See Havens, 455 U.S. at 379, 102 S.Ct. 1114; Fair Employment Council, 28 F.3d at 1276; Spann, 899 F.2d at 27-28. Although in Havens and Fair Employment Council there was evidence that the defendant had discriminated against the organization’s testers, such •evidence was unnecessary -to establish standing because the resources devoted to testing did not form the basis of the organization’s injury. See Havens, 455 U.S. at 379, 102 S.Ct. 1114; Fair Employment Council, 28 F.3d at 1276-77. Indeed, in Spann, this Court found standing without evidence of the defendant’s discrirhination against the Organization’s testers, relying instead on the organization’s allegation that the “defendants’ preferential advertising tended to steer black home buyers and renters away from the advertised complexes and thus impelled the organizations to devote resources to checking or neutralizing the ads’ adverse impact.” 899 F.2d at 27.
To the . extent that precedent can be read to require, the organization to identify the particular burden that the defendant’s discrimination, as opposed to general societal discrimination, places on the organization’s resources, see Havens, 455 U.S. at 379, 102 S.Ct. 1114; Fair Employment Council, 28 F.3d at 1276; Spann, 899 F.2d at 27-28, Rev. Jones’s affidavit is sufficient when read in the light most favorable to him and particularly when read in conjunction with the other affidavits proffered by Rainbow/PUSH alleging employment discrimination by KWMU-FM. Cf. Sierra Club, 292 F.3d at 899; Tao v. Freeh, 27 F.3d 635, 638 (D.C.Cir.1994) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Rev. Jones identifies KWMU-FM as “one of the benchmark institutions in the community” and emphasizes that “[i]t is important for the Court to appreciate, the vital- and unique impor *1246 tance of radio station KWMU-FM in onr community.” Jones Aff. ¶ 8. He explains that the station has a “unique role to play in fostering racial dialogue in St. Louis” because the University is a public educational institution, id., which makes the station’s employment discrimination “particularly egregious,” id. ¶4. He specifies that he seeks to place minority job applicants in the broadcasting industry, and that if “major institutions” with “leadership roles in society as a whole like public radio stations ” would stop discriminating, a significant burden on his counseling and referral resources would be alleviated. Id. ¶ 14 (emphasis added). While other “major institutions” that engage in employment discrimination may also burden his resources, Rev. Jones’s affidavit sufficiently identifies KWMU-FM as one of those “major institutions” whose discriminatory employment practices burden his resources. Such practices are documented by the specific facts alleged in the several affidavits of minority job applicants and employees that describe the station’s discrimination against them. Cf. Rainbow/PUSH Coalition v. FCC, 330 F.3d 539, 544 (D.C.Cir.2003).
According to the court, Op. at 1241, Rev. Jones’s affidavit is insufficient because it fails to mention KWMU-FM by name in paragraph 14 when referring to discrimination by “major institutions ... that provide leadership roles in society as a whole like public radio stations,” even though the entire affidavit refers to KWMU-FM, and paragraphs 4 and 8 specifically describe KWMU-FM as one of the only two secular public radio stations in the St. Louis community and as a benchmark institution that engages in “particularly egregious” employment discrimination. Jones Aff. ¶¶ 4, 8. Nothing in our precedent requires the affidavit to state “magic words” in the way that the court requires today. Rather than confront the content of Rev. Jones’s affidavit and accord him all reasonable inferences, the court simply asserts that he fails to explain how KWMU-FM’s alleged discriminatory employment practices burden his counseling and referral resources. Op. at 1242. Taken together with the affidavits submitted by Rainbow/PUSH and read as a whole in the light most favorable to Rainbow/PUSH, Rev. Jones’s affidavit sufficiently connects, for the purpose of demonstrating constitutional standing, KWMU-FM’s discriminatory employment practices to the burden on his counseling and referral resources.
Rev. Jones’s affidavit also adequately demonstrates that his injury is redressi-ble. A “violation of the procedural requirements of a statute,” such as the Commission’s failure to conduct a hearing pursuant to 47 U.S.C. § 309(e), “is sufficient to grant a plaintiff standing to sue, so long as the procedural requirement was ‘designed to protect some threatened concrete interest’ of the plaintiff.” City of Waukesha v. EPA, 320 F.3d 228, 234 (D.C.Cir.2003) (quoting Defenders of Wildlife, 504 U.S. at 573 n. 8, 112 S.Ct. 2130). This requirement “is not very stringent” and requires only “some sort of connection between the procedural requirement at issue and the substantive action of the agency.” Id. at 234-35. Here, the statute itself establishes the connection between the procedural requirement of an evidentiary hearing and the substantive action of conditioning or denying the license renewal. See 47 U.S.C. § 309 (2000). Thus, for the purpose of evaluating redressibility, the court must assume that Rainbow/PUSH will succeed on the merits and obtain the remedies it seeks, see City of Waukesha, 320 F.3d at 235, such as a denial of the license renewal or a renewal conditioned on nondiscriminatory employment practices.
*1247 By applying a heightened evidentiary standard for causation and redressibility, the court betrays a fundamental misconception about the purpose of the standing requirement. At this stage of the proceeding, the issue is not likelihood of success on the merits. Rather, the standing requirement simply ensures that the petitioner has a “defined and personal stake in the outcome of the litigation” and that the court does not render an advisory opinion. Florida Audubon Soc’y v. Bentsen, 94 F.3d 658, 663 (D.C.Cir.1996) (en banc). For example, in ' Havens, the Supreme Court accepted for the purpose of establishing standing the organization’s allegation that it had expended resources to combat the defendant’s discrimination, while noting that the organization would “have to demonstrate at trial that it has indeed suffered impairment in its role of facilitating open housing before it will be entitled to judicial relief.” 455 U.S. at 379 & n. 21, 102 S.Ct. 1114; see also Fair Employment Council, 28 F.3d at 1277. Indeed, to require evidence beyond the specific facts alleged in Rev. Jones’s affidavit “is to raise the standing hurdle higher than the necessary showing for success on the merits” in a petition seeking an eviden-tiary hearing on KWMU-FM’s alleged employment discrimination Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 181, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).
The Supreme Court has observed that “in many cases the standing question can be answered chiefly by comparing the allegations of the particular complaint to those made in prior standing cases.” Spann, 899 F.2d at 29 (quoting Allen v. Wright, 468 U.S. 737, 751-52, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)) (internal quotation marks omitted). To the extent that this court requires a heightened evidentiary showing to establish standing, it departs from the Supreme Court’s approach. For example, in Friends of the Earth, the Supreme Court held that a plaintiffs affidavit alleging that he intended to fish in a river allegedly polluted by the defendant was sufficient to establish standing, even though the plaintiff did not provide evidence showing that the specific site where he intended to fish was polluted by specific toxins discharged by the defendant. 528 U.S. at 181-82, 120 S.Ct. 693. It was sufficient that the plaintiff identified the river, stated' that' he wanted to fish in the river but was deterred by pollution there, and alleged that the defendant polluted the river. Similarly, it is sufficient that Rev. Jones identified the St. Louis broadcasting job market, stated that he wanted to counsel and place minority job applicants in that market but was burdened by the “pollution” of discrimination by major institutions, and alleged that KWMU-FM was a major “polluter.”
Accordingly, I would hold that Rainbow/PUSH has demonstrated its Article III standing to challenge the Commission’s denial of its request for a hearing on the University’s application for renewal of KWMU-FM’s license.
Upon reaching the merits, I would deny the petition. First, the Commission has “broad discretion in determining whether to hold a hearing in conjunction with a license renewal,” and this court defers to the Commission’s decision not to hold a hearing if it is “reasonable and supported by the evidence before it.” Beaumont Branch of the NAACP v. FCC, 854 F.2d 501, 507 (D.C.Cir.1977). For the reasons stated by the Commission, see Curators of the Univ. of Missouri, 16 F.C.C.R. 1174, 1176-78 (2001), it could reasonably conclude that the affidavits submitted by Rainbow/PUSH did not constitute strong enough evidence to justify departure from the Commission’s “longstanding general policy” of referring such allegations of em *1248 ployment discrimination to the Equal Employment Opportunity Commission. Id. at 1178; see Tallahassee Branch of the NAACP v. FCC, 870 F.2d 704, 710 (D.C.Cir.1989). Second, it was reasonable for the Commission to conclude that it was unnecessary to conduct a hearing on the University’s failure to include in its license renewal application all employment discrimination complaints filed against it. Rainbow/PUSH’s allegations are not necessarily inconsistent with the Commission’s finding that the University did not intend to deceive the Commission. See Citizens for Jazz on WRVR, Inc. v. FCC, 775 F.2d 392, 396 (D.C.Cir.1985); Fox Television Stations, Inc., 10 F.C.C.R. 8452, 8487, 1995 WL 262295 (1995). This finding is supported by both the University’s statement that the omissions were inadvertent, which the Commission was entitled to credit, and the fact that the omitted complaints were resolved in the University’s favor. See Curators, 16 F.C.C.R. at 1179-81.